**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNE WEST, TOM BROWN,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DOCUSIGN, INC.,<br><br>                    Defendant. | Civil Action No. 2:19-cv-0501-AJS<br><br><br><br>LEAD CASE |
| KAREN CLARK and TERA DONAHUE,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GOOD AMERICAN, INC.,<br><br>                    Defendant. | Civil Action No. 1:19-cv-00132-AJS<br><br><br><br>MEMBER CASE<br><br><br><br>*Electronically Filed* |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Karen Clark and Tera Donahue ("Plaintiffs") move the Court for entry of default judgment against Defendant Good American, Inc. ("Good American"). Rule 55(b)(2) authorizes the Court to enter a default judgment against a party when default has been entered by the Clerk of Court. Here, because Good American has willfully failed to appear in this case, and for the reasons discussed below, an entry of default judgment of immediate injunctive relief is appropriate. Plaintiffs reserve the right to submit a fee petition in the future that includes the costs they incur to monitor Good American's compliance with the Court's permanent injunction.

It is both necessary, and compensable, that the Plaintiffs monitor Defendant's actions to ensure Good American changes its corporate policies in a meaningful manner. Adhering to the requests of injunctive relief will cause its website, www.goodamerican.com, to become and

remain accessible to individuals with visual disabilities. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987) (*citing Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) (finding that "[s]ervices devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working . . . are compensable services. They are essential to the long-term success of the plaintiff's suit.")); *see also Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984) (ruling that there was no abuse in discretion of the award as "[t]he court was entitled to believe that relief would occur more speedily and reliably if the monitoring referred to occurred, and that this was a necessary aspect of plaintiffs' 'prevailing' in the case.").

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Clark and Donahue are, and at all times relevant hereto have been, legally blind. Compl. at ¶ 2. Defendant Good American sells clothing such as jeans, activewear, tops, and dresses to the public through its website, www.goodamerican.com ("Website"). *Id.* ¶ 4.

Plaintiffs filed a Complaint against Good American on May 3, 2019. Plaintiffs' Complaint asserts that Good American denies them and approximately 8.1 million Americans who have difficulty seeing access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world. *Id.* ¶ 8. The summons and Complaint were personally served on Lynanne Gares on May 13, 2019. Ms. Gares is Good American's Litigation Management Services Leader and Registered Agent. She is designated by law to accept service on behalf of Good American at 251 Little Falls Drive, Wilmington, DE, 19808.[1] *See* Proof of Service

---

[1] Plaintiffs attach a report from the Delaware Dept. Division of Corporations that identifies Lynanne Gares as Defendant's Registered Agent designated to accept service at 251 Little Falls Drive, Wilmington, DE, 19808 (Exhibit C).

Returned Executed (ECF No. 59; Exhibit A). Good American's answer due date was June 3, 2019.

Neither Good American, nor counsel on its behalf, has appeared in this case, or contacted Plaintiffs' counsel about this litigation. As a result, without opposition, the Clerk entered Default against Good American on June 19, 2019. *See* Clerk's Entry of Default (ECF No. 61; Exhibit B).

## LEGAL STANDARD

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  "As to the issue of liability, the entry of default constitutes an admission of all facts well-pleaded in the complaint." *Sec. and  Vasquez-Baldonado v. Domenech,* 792 F. Supp. 2d 218, 221 (D.P.R. 2011) *(*quoting Fed. R. Civ. P. 55(b)*)*(internal quotations and citations omitted). Generally, a court may enter default judgment without a hearing if it "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object."  *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.*, (In re The Home Rests., Inc.), 285 F.3d 111, 114 (1st Cir. 2002).

## ARGUMENT

## I.   THE COURT SHOULD ENTER DEFAULT JUDGMENT

The Court should enter default judgment against Good American because each of the factors described in *In re The Home Rests., Inc.* strongly favors it: (1) the Court has jurisdiction over the subject matter and parties; (2) Plaintiffs have stated a proper claim; and (3) Good American had fair notice and an opportunity to answer Plaintiffs' Complaint. Id.

///

### A.      The Court Has Jurisdiction Over the Subject Matter And Parties

On August 2, 2018,  this Court upheld jurisdiction over substantially similar website accessibility claims that Plaintiff Antoinette Suchenko brought against ECCO USA, Inc., a New Hampshire-based company that "offers wholesale distribution of footwear for men and women, bags, and other related accessories" through its website, www.us.shop.ecco.com. *Suchenko v. ECCO USA, Inc.,* No. 18cv0562, 2018 U.S. Dist. LEXIS 129862, at *4 (W.D. Pa. Aug. 2, 2018) ("ECCO"). This case is factually indistinguishable from ECCO. Plaintiffs assert Good American "attempts to, and indeed does so, participate in the Commonwealth's economic life by clearly performing business over the Internet. Through its Website, Defendant enters into contracts for the sale of its products with residents of Pennsylvania. These online sales contracts involve, and indeed require, Defendant's knowing and repeated transmission of computer files over the Internet. See *Access Now Inc. v. Otter Products, LLC*, 280 F.Supp.3d 287 (D. Mass. Dec. 4, 2017) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Access Now, Inc. v. Sportswear, Inc.*, 298 F.Supp.3d 296 (D. Mass. 2018) (same)." Compl. ¶ 14. As a result of this targeting, Plaintiff Clark, a resident of this District, *see id.* ¶ 17, attempted to use Good American's Website but was denied access to Good American's online services because the Website is incompatible with screen reader software. *Id*. ¶ 23. As Chief Judge Saris found in *Otter Products*, these facts, accepted as true, are sufficient to establish the Court's jurisdiction over Plaintiffs' claims.

### B.      Plaintiffs' Complaint States A Proper Claim

On April 21, 2017, this Court denied an online retailer's efforts to dismiss identical website accessibility claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Gniewkowski v. Lettuce Entertain You Enters.,* 251 F. Supp. 3d 908, 911 (W.D. Pa. 2017)

("*Lettuce Entertain you*"). As in this case, the plaintiffs in *Lettuce Entertain you* assert the defendant's websites are incompatible with the software they use to navigate the internet because they, for example, are "unable to participate in the gaming and entertainment services provided by Churchill." *Id.* at 919. This Court found that the inaccessible website due to the screen reader software being barred from reading the content, and that the website impediment has had a negative impact on Plaintiffs' ability to frequent Churchill's brick and mortar locations as well. These findings "constitutes an injury-in-fact under Article III of the ADA." *Id.* at 920. As in *Lettuce Entertain You*, Plaintiffs here assert that Good American has engaged in illegal disability discrimination "for [not] providing the same [access] in a manner that is compatible with these auxiliary aids." Compl. ¶ 29. For example, Plaintiffs assert that "Defendant's Website does not announce the promotional offer pop-up, so screen-reader users will not know it is present." *Id.* ¶ 23(a). Further, Plaintiffs assert that "Defendant fails to ensure all features are operable using the keyboard." *Id.* ¶ 23(b). As in *Lettuce Entertain You*, these facts, accepted as true, "state a specific, cognizable claim for relief" such that default judgment is proper in light of Good American's failure to appear.

### C. Good American Had Fair Notice And Opportunity To Answer Plaintiffs' Claims

Plaintiffs filed their Complaint on May 3, 2019. The Summons and Complaint were personally served on Good American's Litigation Management Services Leader and Registered Agent on May 13, 2019. *See* Proof of Service Returned Executed (ECF No. 59; Exhibit A). Good American's answer due date was June 3, 2019. *Id.* Good American has not answered or otherwise responded to Plaintiffs' Complaint, and as a result, the Clerk entered Default against Good American on June 19, 2019. *See* Clerk's Entry of Default (ECF No. 61; Exhibit B). In light

of these undisputed facts, the Court must find that Good American had fair notice and opportunity to answer Plaintiffs' claims such that default judgment is now appropriate.

## II.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF.

Injunctive relief is proper because (1) Plaintiffs have and will continue to suffer irreparable injury from Good American's unchecked disability discrimination; (2) monetary damages are inadequate to compensate Plaintiffs for their injuries; (3) Plaintiffs continue to suffer hardship from Good American's ongoing discrimination; and (4) a permanent injunction ending Good American's discriminatory practices serves the public interest. *See generally Gniewkowski v. Lettuce Entertain You Enters.,* 251 F. Supp. 3d 908, 911 (W.D. Pa. 2017)

### A.    Plaintiffs Have Suffered Irreparable Injury That Cannot Be Adequately Compensated By Money Damages

To obtain a permanent injunction, a moving party must show that it will suffer irreparable harm that is causally attributable to the challenged infringement. *TD Bank N.A. v. Hill*, No. 16-2897, 2019 U.S. App. LEXIS 19687, at *36 (3d Cir. July 1, 2019). Furthermore, "The First Circuit has held that the first two factors are satisfied on a showing of 'substantial injury that is not accurately measurable or adequately compensable by money damages.'" *Donovan v. Philip Morris USA, Inc*., 268 F.R.D. 1, 26 (D. Mass. 2010) (*quoting CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008)).

In *Lettuce Entertain you,* this Court confirmed that plaintiffs who cannot access a public accommodation's online content suffer an injury-in-fact under Article III of the ADA. *See Gniewkowski v. Lettuce Entertain You Enters.,* 251 F. Supp. 3d 908, at 911. As described above, plaintiffs assert that Defendant's Website does not announce the promotional offer pop-up, so screen-reader users will not know it is present. *Compl.* ¶ 23(a). Further, Plaintiffs assert that "Defendant fails to ensure all features are operable using the keyboard." *Id.* ¶ 23(b). This Court

found that similar allegations "constitute an injury-in-fact under Article III of the ADA." *Lettuce Entertain You Enters.,* 251 F. Supp. 3d 908, at 920. These barriers pose an ongoing harm to Plaintiffs that can only be remedied with injunctive relief ordering Good American to fix its Website so that blind Americans can fully and equally access its online offerings.[2]

### B.    The Balance of Hardships Favors an Injunction.

Absent entry of a permanent injunction, Plaintiffs will suffer greater hardship than will Good American if and when an injunction is ordered. While there is no evidence of serious detriment to Defendant's business should the Court order it to comply with existing law, Plaintiffs—and more than 8 million other Americans with visual disabilities—will be foreclosed from ever patronizing Good American's Website if the Court denies their request for injunctive relief.[3] Plaintiffs' requested injunction is appropriately narrow to ensure that Good American bring its Website into compliance with existing law under the ADA, and allows Good American to continue offering its online goods and services during the remediation period. Thus, the balance of hardships weighs in Plaintiffs' favor.

### C.    A Permanent Injunction Will Serve The Public Interest.

The Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*, established a "comprehensive national mandate for the elimination of discrimination against individuals with

---

[2] Title III of the ADA specifically provides for the injunctive relief that Plaintiffs seek in this case.

In the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities…Where appropriate, injunctive relief shall also include requiring the…modification of a policy[.]

42 U.S.C. § 12188(a)(2).

[3] *See* Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed July. 18, 2019).

disabilities." 42 U.S.C. 12101(b)(1). Congress found that "historically, society has tended to isolate and segregate individuals with disabilities," and that "such forms of discrimination…continue to be a serious and pervasive social problem." 42 U.S.C. 12101(a)(2). Congress specifically found that persons with disabilities,

> continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. 12101(a)(5).  As a result, "people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally."  42 U.S.C. 12101(a)(6). The permanent injunction that Plaintiffs request furthers public interest by breaking from this "history of purposeful unequal treatment" and ensuring that Plaintiffs and other individuals with disabilities can access Good American's online content in the future, and are not left in the dust of the Cyber Age.[4]

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request the Court enter a Default Judgment against Defendant Good American, Inc.:

1.      Declaring that at the commencement of this action, Good American was in violation of Title III of the ADA and its implementing regulations in that Good American took

---

[4] "While we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who we want to be. *The forces and directions of the Internet are so new*, so protean, and so far reaching that *courts must be conscious that what they say today might be obsolete tomorrow.*" *Andrews v. Blick Art Materials, LLC*, Case No. 17-CV-767, 2017 WL 3278898, *1 (E.D. N.Y. Aug. 1, 2017) (a website accessibility case *citing Packingham v. North Carolina*, 137 S. Ct. 1730, 1731 (U.S. 2017).

no action that was reasonably calculated to ensure that its Website, www.goodamerican.com, is fully accessible to, and independently usable by, blind individuals.

2.     Ordering, pursuant to 42 U.S.C. § 12188(a)(2), Defendant, and all persons and entities in privity, combination, participation or acting in concert with Defendant, including but not limited to its agents, servants, employees, franchisees, distributors, licensees, successors and assigns, attorneys, officers and directors, whether on behalf of any other business entity heretofore or hereafter created, shall take the following steps necessary to bring its Website, www.goodamerican.com, into full compliance with the requirements set forth in the ADA and its implementing regulations, so that it is fully accessible to, and independently usable by, blind individuals. To ensure Defendant's remediation plan is sufficient, Defendant shall:

a.     retain, at its expense, ADASure ("Mutually Agreed Upon Consultant"), who shall assist Defendant in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA") by conducting (1) an accessibility audit on critical use paths within www.goodamerican.com for conformance with WCAG 2.0 (AA) standards; (2) a 2-day onsite combined Developer/QA training session; and (3) monthly testing for a period of two years after the Mutually Agreed Upon Consultant verifies Defendant's website conforms with WCAG 2.0 (AA) in a Letter of Conformance;

b.     work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c.     work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a monthly basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

      d.     work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

      e.     incorporate all of the Mutually Agreed Upon Consultant's recommendations within sixty (60) days of receiving the recommendations;

      f.     directly link from the footer on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

      g.     work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll-free phone number to report accessibility-related problems;

      h.     provide a notice, prominently and directly linked from the footer on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

      i.     provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

j.      train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website.  Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation.  Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance; and,

k.      modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology.

3.      Plaintiffs, their counsel and its experts may monitor the accessibility of the Website for up to two (2) years after the date on which the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure Good American has adopted and implemented adequate accessibility policies. To this end, Plaintiffs, through their counsel and its experts, shall be entitled to consult with the Mutually Agreed Upon Consultant at their discretion, and to review any written material the Mutually Agreed Upon Consultant provides Good American.

4.      The Court shall retain jurisdiction for a period of two (2) years after the date on which the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure Good American has adopted and implemented adequate accessibility maintenance policies.

5.      Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987), and *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984), the fee petition may include the costs to monitor Good American's compliance with the permanent injunction.

Dated: July 24, 2019                        Respectfully Submitted,

                                            By:   */s/ Benjamin J. Sweet*
                                            Benjamin J. Sweet
                                            ben@sweetlawpc.com
                                            **THE SWEET LAW FIRM, P.C.**
                                            186 Mohawk Drive
                                            Pittsburgh, PA 15228
                                            Phone: (412) 742-0631

                                            Jonathan D. Miller
                                            jonathan@nshmlaw.com
                                            **NYE, STIRLING, HALE &
                                            MILLER, LLP**
                                            33 W. Mission Street, Suite 201
                                            Santa Barbara, CA 93101
                                            Phone: (805) 963-2345

                                            *Counsel for Plaintiffs Karen Clark and Tera
                                            Donahue*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 24, 2019, I filed the foregoing document via CM/ECF, and

also served by U.S. mail on the following parties who have not appeared in this matter:

Good American, Inc.
c/o Lynanne Gares
251 Little Falls Drive
Wilmington, DE, 19808


*/s/ Benjamin J. Sweet*
Benjamin J. Sweet, Esq.